IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JIMMY SELLERS,
      Plaintiff,

vs.                          Case No. 5:09cv367/SPM/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## I.    PROCEDURAL HISTORY

      On October 23, 2006, Plaintiff filed an application for SSI, which was denied initially and on reconsideration (Tr. 11, 62, 64, 120–25).[1]  Following a hearing held May 19, 2009, an

---

[1] All references to "Tr." in this Report refer to the Transcript of Social Security Administration Record filed on February 2, 2010 (*see* Docs. 14–20).  Moreover, page references that follow "Tr." refer to the "Bates-stamped" page numbers found at the bottom, right-hand corner of each page, rather than the page numbers assigned by the court's electronic docketing system.

administrative law judge ("ALJ") issued a decision in which he found Plaintiff "not disabled" as defined under the Act at any time through June 17, 2009, the date of the decision (Tr. 11–18). On September 22, 2009, the Appeals Council denied Plaintiff's request for review (Tr. 1–3). Thus, the decision of the ALJ stands as the final decision of the Commissioner, now subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

II.    FINDINGS OF THE ALJ

The ALJ made the following findings relative to the issues raised in this appeal:

1)    Plaintiff has not engaged in substantial gainful activity since October 23, 2006, the date he applied for SSI.

2)    Plaintiff has the following severe impairments: status-post left tibia and fibula fractures with open reduction internal fixation and status-post left distal radius fracture; cirrhosis of the liver secondary to alcohol and hepatitis C; and history of alcohol abuse.

3)    Plaintiff has no impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4)    If Plaintiff continues to refrain from the use of alcohol he has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b),[2] with the following specifications: he can sit, stand or walk six hours in an eight-hour day; he needs a sit/stand option; he can occasionally climb, balance, kneel and crawl and frequently stoop and crouch; and he can be exposed to heights and hazards only occasionally and to pulmonary irritants only frequently, with no exposure to heat or cold.

5)    Plaintiff is unable to perform any of his past relevant work.

6)    Plaintiff is a "younger individual" (aged 18–49), has at least a high school education, and is able to communicate in English.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

7) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not he has transferable job skills.

8) Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform; Plaintiff, therefore, has not been under a disability, as defined in the Act, since October 23, 2006.

## III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen,

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereafter, citations in this Report and Recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    SUMMARY OF PLAINTIFF'S TESTIMONY AND MEDICAL HISTORY

   A.    Plaintiff's Testimony at His Hearing Before the ALJ (held May 19, 2009)

   Plaintiff was born on July 11, 1960, is right-handed, and at the time of his hearing was divorced and lived alone (Tr. 22). Plaintiff—who has been convicted on three occasions of Driving Under the Influence—used to drink heavily, but he stopped drinking in December 2008 when he was hospitalized for alcohol-related disorders (Tr. 35).[4] His work history is minimal and sporadic. For example, Plaintiff testified that from approximately 1991 through 2005 he performed "odd" jobs for local farmers, such as carpentry or handyman-type jobs, and he was paid in cash (Tr. 25–26). Plaintiff estimated that he never made more than $5,000 in one year doing this type of work (Tr. 27; see also Tr. 126–27 (earnings records from 1977 through 2008)). In 2005 he held employment with Sears, for about year, installing vinyl siding, and at the time of his accident (September 6, 2006) he was working for Dothan Awning installing siding and had been on the job for only about two weeks (Tr. 24). Plaintiff testified that he injured his left ankle and wrist when a ladder malfunctioned and he fell (Tr. 27, 32). As a result of these injuries, Plaintiff testified, he cannot stand on his left foot more than ten minutes; he has constant ("24/7") pain in his left ankle (Plaintiff rated his ankle pain as a 20 on a scale of 0–25); he cannot sit more than twenty minutes because his ankle "gets numb" and he needs to "move it" and then sit back down and elevate it; his ankle is constantly swollen; he can walk for only about ten minutes or approximately 100 yards; and he can lift and carry only about ten pounds occasionally (Tr. 27, 29–30, 32–33, 38, 42–43). As a result of cirrhosis of the liver, Plaintiff testified, he becomes "very short of breath" within five minutes of any activity and has constant stomach pain (Tr. 27, 36, 39), although he acknowledged that his symptoms have improved since he quit drinking (Tr. 36). Nevertheless, Plaintiff rated his stomach pain as a 15 on a scale of 0–25 and noted that the pain reaches this level every day; he stated he must lie down when the pain occurs (Tr. 36–37). Plaintiff testified that he was not taking any pain medication at the time of his

---

[4] Treatment records reflect a report by Plaintiff that he drank "more or less" a six-pack of beer per day for "many years" (see Tr. 365).

Case No. 5:09cv367/SPM/EMT

hearing, although he explained he had previously been prescribed codeine and Dilaudid for pain but both made him sick (Tr. 41). Plaintiff noted that he lives by himself and does "nothing" around the house or for recreation; he explained that his mother does everything for him, including cooking, shopping, housekeeping, and paying bills (*see* Tr. 33–34). Lastly, Plaintiff testified that he smokes about a half a pack of cigarettes per day (which his mother buys for him), and he noted that his shortness of breath is worse when he smokes (Tr. 43).

B.     Relevant Medical History

Plaintiff presented to Southeast Alabama Medical Center ("SAMC") on September 6, 2006, after falling, approximately four to five feet, off a ladder at work (Tr. 317–18; *see also* Tr. 209). Plaintiff complained of pain/injury in the left ankle and wrist, and he rated his pain as a nine on a ten-point scale, although SAMC staff noted that Plaintiff did not respond "as if [he was] in much pain" (Tr. 311, 326). Following x-ray examinations, Plaintiff was assessed with left distal tibia and fibula (ankle) fractures, and he underwent a closed reduction with application of an external fixator (*see, e.g.*, Tr. 297, 299, 319–20). On September 14, 2006, Plaintiff presented to David Alford, M.D., for follow-up (Tr. 297–98). After reviewing x-ray results, Dr. Alford assessed "distal tibia and fibula fracture" and "distal radius [wrist] fracture nondisplaced" (Tr. 297).[5] He recommended that Plaintiff wear a cast on his left arm and undergo an open reduction internal fixation ("ORIF") of the fibula fracture with adjustment of the external fixator (*id.*). The recommended ORIF was performed on or about September 19, 2006 (during which the external fixator was removed due to a pin tract infection), and Plaintiff returned to Dr. Alford on October 10, 2006 (*see* Tr. 190, 294–95). Dr. Alford then scheduled an ORIF of Plaintiff's distal tibia fracture for October 19, 2006 (Tr. 293–94). Following the second ORIF, Dr. Alford noted that Plaintiff's wound from the first ORIF had healed, and there was no evidence of ongoing infection (Tr. 219).

Next, on November 14, 2006, following Plaintiff's complaints of post-operative pain and swelling, an ultrasound of Plaintiff's left lower extremity was obtained, which focused on the deep venous structures (Tr. 187). The results were essentially normal, with no evidence of deep venous thrombosis identified (*id.*).

---

[5] X-rays of the left wrist were apparently taken at or near the time of Plaintiff's September 14 office visit with Dr. Alford, as only ankle x-rays were taken at SAMC on September 6.

Case No. 5:09cv367/SPM/EMT

A computerized tomography scan ("CT") of Plaintiff's left ankle was obtained on February 2, 2007 (Tr. 210). Plaintiff was assessed with severe disuse osteopenia, post ORIF distal tibia and fibular fractures, and "diffusely irregular articular surface of the distal tibia where fracture line extends through the articular cartilage" (*id.*).

Plaintiff returned to Dr. Alford on February 27, 2007, and reported being "pain free" when walking in his cast boot but noted he could walk only about an hour when he was not wearing the boot (Tr. 352). A physical examination revealed "quite reasonable" range of motion in the ankle, with no tenderness "about the metaphyseal tibia or fibula" (*id.*). Dr. Alford also noted that Plaintiff's ankle was stable, with only "very mild" ankle valgus; he also noted that Plaintiff could "dorsiflex, plantar flex, [and] invert and evert against resistance" (*id.*). Dr. Alford reviewed the CT scan from February 2 and noted what appeared to be "abundant callus in a healed fracture," with a "quite reasonably maintained ankle joint" (*id.*). Plaintiff was assessed with post traumatic arthritis ankle and healed distal intra-articular tibia and fibula fracture (*id.*). Dr. Alford's recommendation following this office visit (which is pertinent to an issue raised in this appeal and, therefore, is quoted verbatim) was as follows:

> I think the wisest thing here in the short term would be to get [Plaintiff] in a double upright brace with a calf lacer, soft cushioned insert and a rocker sole modification. I think this should get him back to work sooner. At some point he may require an ankle arthrodesis [a surgical fusion, usually required after little motion remains in a particular joint, such as the ankle (*see* http://www.mdguidelines.com/arthrodesis/definition (last visited December 7, 2010)]. I will see him back to check his brace. If he is doing well with this we could place him at MMI [maximum medical improvement] for this injury knowing the future medical concerns would be an ankle arthrodesis.

(*id.*).

Upon referral from Dr. Alford, Plaintiff was seen by Judson Moore, M.D., on March 6, 2007, with a chief complaint of "left wrist pain" (Tr. 351). A physical examination revealed normal sensation and good digital range of motion but significantly decreased wrist range of motion with pain, especially with ulnar deviation (*id.*).[6] Dr. Moore recommended that Plaintiff undergo a CT of

---

[6] In the March 6 treatment note, Dr. Moore references "x-rays [of the left wrist] reviewed from January 19th," but the undersigned has not located any wrist x-ray results in the record. However, Dr. Moore noted that the wrist x-ray results he reviewed "show a dorsal deformity with shortening and dorsal angulation" (Tr. 351).

the left wrist and return to him following the CT (*id.*). The CT was obtained on March 12, 2007, and it revealed some deformity consistent with an old trauma/fracture and subsequent healing, as well as degenerative changes (*see* Tr. 345).[7]

On December 23, 2008, Plaintiff was admitted to Jackson Hospital "under mandatory first call as an agent of the hospital" (Tr. 367). The discharge summary indicates that Plaintiff's admission was related to his "chronic alcoholism" and that during Plaintiff's three to four-day hospitalization he underwent blood transfusions to increase his hemoglobin levels and was administered Ativan for agitation and alcohol withdrawal, as well as multivitamins and thiamine (*id.*). Plaintiff improved over the course of his hospitalization and was discharged with the following medications: Protonix, Aldactone, Lasix, Demerol for pain, Phenergan for nausea and vomiting, and multivitamins (*id.*). Plaintiff reported feeling "much better" upon his discharge; he had no abdominal pain, and he was not "quite as weak" (*id.*).

On January 5, 2009, Plaintiff presented to Palep N. Rao, M.D., upon referral from Mark R. Akerson, the attending physician at Jackson Hospital (*see* Tr. 365, 367). Plaintiff reported that he stopped drinking "about two weeks ago" (presumably at or upon his admission to Jackson Hospital) (Tr. 365). Dr. Rao noted that Plaintiff had a long-term history of hepatitis C and that the hospital's findings suggested cirrhosis of the liver and hepatic decompensation (*id.*). Plaintiff was assessed with a variety of conditions, as follows: cirrhosis of the liver secondary to alcohol and hepatitis C, ascites, portal hypertension and associated hepatosplenomegaly, anemia, chronic smoker, alcoholism, and history of chronic pain (Tr. 366). Plaintiff was continued on Aldactone and Lasix, and Dr. Rao recommended that Plaintiff undergo additional lab work in two to three weeks (*see id.*). Dr. Rao noted that additional intervention might be considered in the future and that, at the time, Plaintiff was not a transplant candidate, as his renal function was normal, and Plaintiff appeared to "have some marginal compensation" (*id.*). Plaintiff was strongly advised to refrain from the use of alcohol and certain foods, and he was sent for hepatitis A and B vaccinations (*see id.*).

---

[7] It does not appear that Plaintiff returned to Dr. Moore following the CT scan, as the undersigned has located no records documenting treatment or hospitalizations between the date of the CT scan (March 12, 2007) and December 23, 2008.

The remaining treatment records reflect two office visits with Dr. Akerson, on January 21 and April 7, 2009 (*see* Tr. 372–75). At the January visit Dr. Akerson noted that Plaintiff presented for "hospital follow-up" and that Plaintiff had lost thirty pounds since his hospitalization and was "now not yellow" (Tr. 372–73). Dr. Akerson also noted that Plaintiff was "doing well" and was not using alcohol (Tr. 373). Plaintiff reported no joint pain, and his appearance was generally normal (*id.*). Objective testing revealed no edema, clubbing, or cyanosis in the extremities (*id.*). Plaintiff was assessed with cirrhosis and alcoholism in remission; his Lasix was decreased, and his other medications were continued (*id.*). Dr. Akerson stressed the importance of Plaintiff's continued abstinence from the use of alcohol (*id.*). When Plaintiff returned in April, Dr. Akerson again assessed Plaintiff with cirrhosis of the liver related to his alcoholism, but he noted that the ascites was resolving (Tr. 374). Plaintiff's appearance was generally normal, and again, examination of his extremities revealed no edema, clubbing, or cyanosis, although some swelling was noted in the left ankle (*id.*).

C.      Other Information Within Plaintiff's Claim File

Janet Norton, a non-examining agency physician, completed a Physical RFC Assessment on December 1, 2006 (Tr. 177–84). She opined that Plaintiff was able to frequently lift or carry ten pounds, occasionally lift or carry twenty pounds, and stand or walk about six hours in an eight-hour workday (she did not indicate how long Plaintiff could sit) (*see* Tr. 178). She noted that Plaintiff's ability to push or pull was unlimited, and he had no postural, manipulative, visual, communicative, or environmental limitations (Tr. 178–81). In relevant part, Dr. Norton opined that Plaintiff was not disabled because he was expected to heal in less than one year from the date of his accident and, therefore, his condition did not satisfy the twelve-month duration requirement (*see* Tr. 178).

Finally, the record contains a one-page "Case Analysis," dated April 16, 2007, and authored by David Guttman, M.D., who apparently is also a non-examining agency physician (*see* Tr. 359). Dr. Guttman opined that a "durational denial" of Plaintiff's claim for SSI is appropriate, since Plaintiff was expected to be "WNL" (within normal limits) before the one-year anniversary of his accident, noting that Plaintiff's treatment records following the accident reveal that "he is doing well" (*id.*).

V.      DISCUSSION

Plaintiff raises two issues in the instant appeal, which for organizational purposes are rearranged in this Report.  Specifically, Plaintiff contends the ALJ erred in failing to properly consider his subjective complaints of pain and other symptoms (Doc. 28 at 1–2).  Plaintiff also contends his "[h]epatitis C with cirrhosis of the liver and anemia arise [sic] to the level that would preclude all work" (Doc. 28 at 1, 15–16 ).[8]

A.     Eleventh Circuit Pain Standard

Pain and other subjective complaints are treated by the Regulations as symptoms of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  The Eleventh Circuit has articulated a three-part pain standard, sometimes referred to as the Hand test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1986) (originally adopting the three-part pain standard).  The Eleventh Circuit continues to follow the Hand test.  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also, e.g., Ogranaja v. Commissioner of Social Security, 186 Fed. Appx. 848, 2006 WL 1526062, at *3 (11th Cir. June 5, 2006) (quoting Wilson, 284 F.3d at 1225); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1214–15 (11th Cir. 1991) (illuminating Eleventh Circuit's history of the pain standard).

---

[8] The court notes that Plaintiff has supported his factual contentions regarding his medical condition by referring to exhibits in the record (e.g., Exhibit 3F, 4F, 5F, 7F) instead of page numbers (see Doc. 28 at 3–9).  This directly contravenes the court's order, issued February 3, 2010, which—in directing Plaintiff to file a memorandum in support of his complaint—specifically states, "The memorandum shall set forth Plaintiff's legal contentions and shall specifically cite the record by page number for factual contentions." (Doc. 21 at 1 ¶ 1) (emphasis added).  In failing to comply with this court's order, Plaintiff has needlessly complicated review of his claims, as many of the exhibits referenced by Plaintiff are lengthy.  For example, Exhibit 5F is 134 pages in length, yet Plaintiff generally refers the entire exhibit in support of specific factual contentions (see, e.g., Doc. 28 at 5).  In the future, counsel shall comply with the page-citation requirement; otherwise, factual contentions will be disregarded.  In other words, the court will not scan voluminous exhibits to locate facts in support of the claims counsel asserts.

Underlying the <u>Hand</u> standard is the need for a credibility determination concerning a plaintiff's complaints. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain [or other symptom]." <u>Scharlow v. Schweiker</u>, 655 F.2d 645, 649 (5th Cir. Sept. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[9] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed symptom]. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." <u>Hand</u>, 761 F.2d at 1548–49. It is within the ALJ's "realm of judging" to determine whether "the quantum of [symptoms a claimant] allege[s] [is] credible when considered in the light of other evidence." <u>Arnold v. Heckler</u>, 732 F.2d 881, 884 (11th Cir. 1984). The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here, in considering Plaintiff's subjective complaints, ALJ first articulated the correct pain standard (*see* Tr. 14). The ALJ also specifically mentioned 20 C.F.R. § 416.929, "which contains the same language regrading the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." <u>Wilson</u>, 284 F.3d at 1226 (11th Cir. 2002) (referring to parallel DIB provision and citing <u>Elam</u>, 921 F.3d at 1214–15). Thereafter, the ALJ summarized portions of Plaintiff's testimony concerning his physical abilities, pain, and other symptoms (*see* Tr. 14; *see also* Section IV. A, *supra* (detailing Plaintiff's hearing testimony)). The ALJ then concluded that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent

---

[9] Decisions of the United States Court of Appeals for the Fifth Circuit decided on or before September 30, 1981 are binding precedent in the Eleventh Circuit. <u>Bonner v. Pritchard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

with" the RFC determined by the ALJ (i.e., light work, with certain exceptions including a sit/stand option and environmental and hazard-related limitations) (Tr. 14).

In support of his credibility determination, the ALJ first found, generally, that Plaintiff's overall complaints of pain and other symptoms were not corroborated by his treatment records (Tr. 14–15), which finding is well supported by the record. Initially, the time frame relevant to Plaintiff's claim for SSI is October 23, 2006 (the date he applied for benefits) through June 17, 2009 (the date the ALJ issued his decision). *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which he is both disabled and has an SSI application on file). But the record in this case contains minimal evidence of medical treatment during the relevant time. As outlined *supra*, the medical records pertaining to Plaintiff's fall and related injuries are dated between September 2006 and March 12, 2007, and the medical records pertaining to Plaintiff's alcoholism-related disorders are dated December 23–26, 2008 (his hospitalization) and January 5, January 21, and April 4, 2009 (his follow-up visits). Thus, Plaintiff sought no treatment for more than twenty months (that is, between mid-March 2007 and late December 2008) during the time frame relevant to this appeal. As the ALJ noted, if Plaintiff's pain and limitations were as severe as he alleged he undoubtedly would have sought ongoing medical treatment (Tr. 14). *See* Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, it is proper for ALJ to consider—in the evaluation of a claimant's credibility—use of painkillers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing); Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995) (failure to seek medical treatment for a long time during a claimed period of disability tends to indicate tolerable pain).

Next, in addition to generally discrediting Plaintiff's overall complaints based on the failure to seek ongoing treatment, the ALJ specifically discounted certain complaints of Plaintiff, as follows:

(i)    Plaintiff's complaints of constant ankle pain and resulting inability to stand or walk more than ten minutes. The ALJ noted that Plaintiff sought no treatment for his ankle after March 2007, and although Dr. Akerson noted some swelling in the ankle when he saw Plaintiff in April 2009, no ankle-related diagnosis was made at that time, and no treatment was recommended

(Tr. 15). Indeed, Plaintiff's primary purpose in seeing Dr. Akerson, the attending physician during his hospitalization, was for follow-up on matters related to the hospitalization, such as Plaintiff's cirrhosis (*see* Tr. 372–75). The ALJ also noted that Plaintiff was not taking medication at the time of his administrative hearing (May 2009) for ankle pain or any other type of pain (*see* Tr. 15).[10] Although Plaintiff testified he had been prescribed pain medications in the past and that those medications made him sick (apparently to explain why he was not taking pain medication), Plaintiff reported no medication side effects to his physicians at any time. Moreover, Plaintiff's own reports regarding medication side effects contradict his testimony. For example, on a Disability Report dated October 26, 2006, Plaintiff reported that he was taking Demerol for pain and that it caused no side effects (Tr. 146 *see also* Tr. 3 (reflecting date of the report)). Likewise, on a Disability Report dated February 9, 2007, Plaintiff reported he was taking both Demerol and Lortab for pain and that neither medication caused any side effects (Tr. 160; *see also* Tr. 3). Thus, the record supports the ALJ's finding that, if Plaintiff's ankle pain (or other pain) was as severe as he alleged, he would likely have sought regular treatment and obtained medication for pain control. And even if Plaintiff could not take certain pain medications due to any particular side effect (i.e., sickness), other pain medications—according to Plaintiff's own reports—did not cause sickness and could have been obtained if Plaintiff truly experienced the amount of pain he alleged. Additionally, as previously noted, in February 2007 Plaintiff told Dr. Alford he was "pain free" when walking in his cast boot and that he could walk about an hour when he was not wearing the boot (Tr. 352). Thus, to believe Plaintiff's hearing testimony, one would have to accept that Plaintiff could walk an <u>hour</u> shortly after his surgeries without any assistive device, but more than two years later—long after his surgeries and long after diagnostic testing revealed a "quite reasonably maintained ankle joint"—he could walk only <u>ten minutes</u> or 100 yards. As the ALJ found, such testimony was not credible and was contradicted by Plaintiff's treatment records.

(ii)    <u>Plaintiff's allegation that he cannot lift or carry more than ten pounds</u>. The ALJ noted that Plaintiff provided no reasonable explanation for this limitation (Tr. 15). Indeed,

---

[10] The record supports the ALJ's finding, as Plaintiff indeed testified that he was not taking any pain medication in May 2009 (Tr. 41). The record also reflects that Plaintiff was taking no pain medication in or about May 2007 (*see* Tr. 173 (Disability Report dated May 15, 2007)).

Plaintiff did not explain why he could lift no more than ten pounds, which is especially curious because Plaintiff is right-handed and it is his left wrist that was injured, as the ALJ noted (*id.*).

        (iii)    <u>Plaintiff's allegation regarding shortness of breath</u>. The ALJ noted, correctly, that "this allegation is not corroborated by any treatment records, pulmonary function studies, or any medically determinable condition that could reasonably be expected to cause shortness of breath" (Tr. 15). Thus, Plaintiff failed to meet the first <u>Hand</u> factor, which requires evidence of an underlying medical condition. Stated another way, there is no evidence that Plaintiff suffers from a medically determinable impairment likely to result in shortness of breath. Indeed, Plaintiff admitted when he was not smoking he experienced less shortness of breath. Thus, it appears the condition—if it exists—is related to Plaintiff's smoking, not an underlying physical condition, and further, that it can be controlled by Plaintiff's decreasing or eliminating smoking. *See* <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.") (citation omitted); <u>Brown v. Barnhart</u>, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (citations and quotation omitted). Moreover, the ALJ did not err in considering, among other factors, that no objective evidence confirms the existence or severity of Plaintiff alleged shortness of breath. *See* 20 C.F.R. § 404.1529(c) (although not determinative of a claimant's credibility alone, an ALJ is permitted to consider the objective medical signs and laboratory findings, or lack thereof, when determining a claimant's credibility). Likewise, the ALJ properly considered that Plaintiff did not report shortness of breath to any physician. To the contrary, as the ALJ noted, Plaintiff "specifically denied any shortness of breath when he saw Dr. Akerson in April 2009" (Tr. 15 (citing Tr. 373)). Therefore, the ALJ properly concluded and considered that Plaintiff's testimony regarding shortness of breath was inconsistent with his treatment records.

        (iv)    <u>Plaintiff's allegations regarding disabling liver/stomach pain</u>. The ALJ noted that although Plaintiff's cirrhosis could be expected to cause some pain, the extent of the pain alleged by Plaintiff (i.e., daily pain at a relatively high level) is inconsistent with his treatment records (*see* Tr. 15). The ALJ specifically referenced Plaintiff's visits with Dr. Akerson following his hospitalization and noted that Plaintiff made no complaints of stomach pain. While Plaintiff

takes issue with this particular finding—pointing to complaints made by Plaintiff <u>at the time he was</u> <u>hospitalized</u> (*see* Doc. 28 at 16)—the court is in no way persuaded that the ALJ erred. Although Plaintiff complained of stomach pain upon his admission to the hospital,[11] the discharge summary specifically reflects that Plaintiff's abdominal pain was relieved at the time of his discharge three days later (Tr. 367). And, as the ALJ noted, Plaintiff reported no stomach pain during follow visits with Dr. Rao or Dr. Akerson, as would be expected if Plaintiff truly suffered from severe, daily stomach pain as alleged.

In conclusion, the court notes that Plaintiff, in large part, dismisses the ALJ's discussion of his credibility based on his own view of the evidence. For example, Plaintiff generally refers to his injuries and conditions and argues that they could reasonably be expected to cause the pain and disabling symptoms he alleged (*see* Doc. 28 at 17–18). He also points to a comment made by Dr. Alford on February 27, 2007, that Plaintiff <u>may</u> at some point in the future require an ankle arthrodesis, as evidence of the disabling nature of Plaintiff's ankle injury (*see id*; Tr. 352). Dr. Alford's comment, though, is far from a definitive statement, and further, it is not confirmed by Plaintiff's subsequent course of treatment—or lack thereof—related to his ankle. Likewise, Plaintiff's reliance on Dr. Moore's comment on March 6, 2007, that Plaintiff "might be a candidate for an ulnar shortening osteotomy" of the left wrist (Doc. 28 at 17 (referencing Tr. 351)), is misplaced. Not only is Dr. Moore's comment equivocal, it also was made <u>before</u> Plaintiff underwent the CT scan of his wrist, which resulted in minimal findings regarding <u>old</u> trauma to the wrist (with subsequent healing). Moreover, Plaintiff saw Dr. Moore on only one occasion and did not return to him following the CT scan as recommended (or any other physician for treatment of the wrist for that matter), so there is no evidence to suggest Dr. Moore would have offered the same comment after reviewing the CT results. Furthermore, the fact that the CT scan documented <u>old</u> trauma suggests Plaintiff was able to work despite the wrist injury. Even so, the question is not whether the evidence could support Plaintiff's alternative view of the facts. The relevant inquiry is whether the ALJ's decision is supported by substantial evidence. Here, the ALJ articulated the inconsistencies on which he relied in discrediting Plaintiff's subjective complaints of pain, and his findings are

---

[11] Plaintiff was diagnosed with "acute abdominal pain secondary to ascites" upon his admission to the hospital in December 2008 (Tr. 367).

supported by substantial evidence on the record as a whole; therefore, it is evident that the ALJ's credibility finding should be affirmed. *See* Foote, 67 F.3d at 1561–62. A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court. *See id.*

B.      Plaintiff's Hepatitis C with Cirrhosis of the Liver and Anemia

As previously noted, Plaintiff asserts he is entitled to relief because "his [h]epatitis C and cirrhosis of the liver are so severe" he cannot "work on a full time basis as a result of the symptomology" (which "symptomology," according to Plaintiff, apparently includes acites, portal hypertension, anemia, hepatosplenomegaly, and history of chronic pain) (*see* Doc. 28 at 15–16). Plaintiff, however, offers no legal support for his claim (and, therefore, the precise nature of his claim is unclear). To illustrate the vagueness of Plaintiff's claim, the undersigned recites Plaintiff's entire argument in support thereof, as follows:

> According to the ALJ, Dr. Palep N. Rao, M.D. reported that Mr. Sellers was not a candidate for a liver transplant because his renal function was normal, and he seemed to have some marginal compensation. (Tr. 13). This was a result of a visit in January 2009. The ALJ, however, failed to mention that during that same examination Dr. Rao determined that Mr. Sellers suffered from acites, portal hypertension, anemia, hepatosplenomegaly, and history of chronic pain. (Exhibit 12F). Ascites is the accumulation of serous fluid in the peritoneal cavity. (TABER'S CYCLOPEDIC MEDICAL DICTIONARY (Clayton L. Thomas, M.D., M.P.H., A0129, 14th ed., 1981)). A common cause of ascites is advanced liver disease or cirrhosis. Common risk factors include Hepatitis B, Hepatitis C, and long standing alcohol abuse. Other potential risk factors are related to other underlying conditions, such as congestive heart failure, malignancy, and kidney disease. (PROFESSIONAL GUIDE TO DISEASES, Chapter 11, page 747 (Judith A. Schilling McCann, RN, MNS, 8th ed., 2005). Dr. Rao reported that Mr. Sellers suffered form [sic] portal hypertension which is defined as an increase in the pressure within the portal vein. The increase in pressure is caused by a blockage in the blood flow through the liver. Most causes of portal hypertension cannot be treated. (Id.). . . . On December 23, 2008 Mr. Sellers was admitted to Jackson Hospital in Marianna with acute abdominal pain secondary to ascites. (Exhibit 11F). In addition, the Plaintiff's admission diagnosis included splenomegaly, cirrhosis, hypokalemia, anemia, and pancreatitis.

(Doc. 28 at 15–16).

While Plaintiff's precise ground for relief is unclear, the court has reviewed the record as a whole and determined that Plaintiff has not established entitlement to relief. To be clear, the record contains no evidence indicating that Plaintiff obtained treatment for any of the conditions or

symptoms mentioned here until his hospitalization on December 23, 2008, which is less than six months prior to the close of the time frame relevant to this appeal (that is, June 17, 2009). Moreover, the discharge summary related to this hospitalization, dated December 26, 2008, reflects substantial improvement over the course of Plaintiff's stay (e.g., Plaintiff was noted to be "much better" with no abdominal pain upon his discharge), as do records from the few follow-up appointments Plaintiff attended afterward (i.e., with Dr. Rao (reflecting, in relevant part, normal renal function) and Dr. Akerson (noting that Plaintiff was doing well and continuing to refrain from the use of alcohol)). Likewise, Plaintiff testified that his symptoms improved once he stopped drinking, which testimony is consistent with the medical records that follow his hospitalization.[12]

Moreover, although Plaintiff's argument, as quoted *supra*, focuses in part on Dr. Rao's diagnosis of ascites, Plaintiff fails to mention Dr. Akerson's treatment note dated April 7, 2009—the last treatment record in the file—which specifically states that this condition was "resolving" (Tr. 374). And with regard to portal hypertension, also specifically mentioned *supra*, Plaintiff has offered nothing to support any claim for relief other than noting the one-time diagnosis found in Dr. Rao's treatment note dated January 5, 2009,[13] as well as a definition of the disease (as found in the Professional Guide to Diseases).

To the extent Plaintiff contends his diagnoses, alone, render him disabled, the contention is without merit. It is well established that a diagnosis of medical condition, alone, is insufficient to establish severity at step two. *See, e.g.*, Salles v. Comm'r. of Social Security, 229 Fed. Appx. 140, 145 (3d Cir. 2007) (diagnoses alone, including diagnosis of depression, insufficient to establish severity at step two). Plaintiff must present evidence demonstrating that the conditions significantly limited his ability to do basic work activities or impaired his capacity to cope with the mental demands of working. *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a); *see also* Ramirez v. Barnhart, 372

---

[12] As previously noted, Plaintiff stopped drinking at or about the time of his hospitalization (i.e., late December 2008), so he necessarily worked when he was drinking even though his symptoms were worse when he drank. Indeed, Dr. Rao noted in January 2009 that Plaintiff was drinking up to a six-pack of beer per day until late December 2008 and that Plaintiff had a "long term history of hepatitis C" (Tr. 365). This evidence suggests that, although Plaintiff experienced an exacerbation of his symptoms in December 2008, he was able to work despite suffering, "long term," from hepatitis C (and, presumably, symptoms related thereto).

[13] The subsequent treatment notes of Dr. Akerson, which are the only other medical records in the file, include no diagnosis of portal hypertension.

Case No. 5:09cv367/SPM/EMT

F.3d 546, 550 (3d Cir. 2004); <u>Salles</u>, 229 Fed. Appx. at 145.  Plaintiff has offered no such evidence. Rather, Plaintiff relies entirely on the medical definitions of (some of) his diagnoses, presumably to argue that the conditions (and related symptoms) are not only severe, but <u>disabling</u>.  If diagnoses alone are insufficient to establish severity at Step Two, they necessarily are insufficient to establish disability at any subsequent step of the sequential analysis.

In conclusion, having carefully reviewed the entire record and having considered Plaintiff's contentions, the undersigned concludes that Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at1560.  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this <u>15</u><sup>th</sup> day of December 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**